HARRY FREEDMAN, respondent,

*v.*

ISAAC FINEBERG, appellant.

[Submitted December 15th, 1916.    Decided March 5th, 1917.]

Under the special terms of a give and take offer by one equal partner to sell to the other, the words "All moneys which I have in said partnership business in excess of the moneys in said business belonging to you," means one-half of the difference between the cash withdrawals of the two partners and not the whole of said difference.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Backes.

*Mr. Scott Scammell* and *Mr. Charles De F'. Besore*, for the appellant.

*Mr. Frank S. Katzenbach, Jr.*, and *Mr. George S. Macpherson*, for the respondent.

The opinion of the court was delivered by

GARRISON, J.

An equal partnership that had existed for some time between Freedman & Fineberg having been dissolved by mutual consent, Freedman made in writing a give or take offer to Fineberg, by which Freedman offered to buy the property and business for $25,000, to be paid in cash to Fineberg, together with a complete release by Freedman of all claims and demands against Fineberg growing out of the partnership. Freedman also offered to sell to Fineberg on the same terms excepting as to the terms of payment, which were provided as follows:

"7. In case you elect to purchase all my right, title and interest in and to said partnership, as hereinbefore provided, it is understood and agreed that in addition to the purchase price above named, I shall also receive all moneys which I have in said partnership business in excess of the moneys in said business belonging to you, which moneys are to be paid to me in the same ratio or proportion, as to cash payments and notes, as the above-mentioned purchase price of my one-half interest is to be paid to me under the terms hereof."

Fineberg elected to buy and paid to Freedman "the purchase price above named," to wit, $25,000, but made no further payment owing to irreconcilable differences as to the sum due to Freedman under the seventh section of his accepted offer. This was the question raised in the court below by the cross-bill filed by Fineberg to a bill filed by Freedman to rescind the sale. The learned vice-chancellor conceiving that by section 7 Freedman was entitled to the difference between the sum of his cash withdrawals and the sum of Fineberg's cash withdrawals, ascertained each of these sums as follows, viz., Freedman's withdrawals, $6,750.40; Fineberg's withdrawals, $31,145.43; the difference between which, viz., $24,395.03, is the sum which, in the opinion of the court below, Fineberg must pay to Freedman in order to obtain a specific performance of their contract. By an error of subtraction this sum appears in the decree as $24,390.03.

We are unable to concur in this conclusion for two reasons—*first*, because this sum of $24,395.03 does not represent Freedman's monied interest in the business in excess of Fineberg's;

on the contrary, such excess was eliminated by the cancellation of the two withdrawals up to the amount of Freedman's withdrawal; hence what remained after such cancellation represents a sum in which each of the partners has an equal interest, so that if Fineberg should pay into the firm account the whole of said sum, he would be entitled to one-half of it and Freedman would be entitled to the other half of it.

The other reason is that by Freedman's offer Fineberg was entitled to buy "on the same terms" on which Freedman offered to buy, which, in a give or take offer, normally, means that the price is the same whichever party buys. The view taken in the court below, which results in two different purchase prices for the same property, violates this meaning, and at the same time denies all force to the words "on the same terms."

Section 7 of the agreement should, in our opinion, be construed with reference to the entire agreement, and especially with reference to those sections of it that fix the price to be paid by Freedman in case his offer to buy was accepted.

The price that Freedman offered to pay to Fineberg, as stated in the offer itself, was made up of two elements, viz., $25,000 in cash and Freedman's release of Fineberg from all claims growing out of the partnership. The cash sum of $25,000 remains the same in case Fineberg became the purchaser. If, therefore, we ascertain the sum upon which Freedman's release of Fineberg would operate, we shall have ascertained the price that Freedman was to pay to Fineberg and also have established from the agreement itself a definite meaning to be given to the equivocal language of its seventh section, which has caused the trouble.

Taking the figures arrived at by the learned vice-chancellor, in the correctness of which we concur, Fineberg had withdrawn $31,145.43 and Freedman had withdrawn $6,750.40, which canceled each other excepting as to the differences, viz., $24,395.03, as to which sum, as we have seen, Freedman had a claim to one-half, viz., $12,197.51. This is the claim, therefore, upon which Freedman's release of Fineberg would have operated. The addition, therefore, of this sum of $12,197.51 to the $25,000 in cash establishes the price that Freedman offered to pay for the property, viz., $37,197.51.

When, therefore, Fineberg exercised his option to buy the same property, "upon the same terms," the price that Fineberg agreed to give and that Freedman agreed to take was $37,197.51, of which sum $25,000 having already been paid in cash, the sum of $12,197.51 remains to be paid by Fineberg in order to complete his purchase under the terms of the seventh section of the agreement. The meaning that is thus given to the language of the seventh section is that the sum there described as the excess of money Freedman had in the business means all money claims that Freedman had against Fineberg growing out of the business, and, as this is precisely what Freedman's release of Fineberg would have operated upon, the difference of the two descriptions is one of words only; the intent thus lamely expressed being that the cash value of Freedman's release to Fineberg, if Freedman became the purchaser, should be paid in cash by Fineberg to Freedman if Fineberg became the purchaser.

This construction of the agreement gives weight to all of its unequivocal language, while at the same time it gives to the equivocal language of the seventh section a meaning that is consistent with, and derived from, the agreement itself interpreted within its four corners.

The decree of the court of chancery awarding specific performance is affirmed, with a modification as to the sum to be paid by the appellant to the respondent in accordance with the views herein expressed.

The appellant is entitled to costs upon this appeal upon which he succeeds in so far as he challenged the decree of the court below.

WHITE, J. (dissenting).

I am unable to agree with the foregoing ascertainment of the result of clause 7 in the sale agreement, which clause provides that the selling partner shall, in addition to the "give or take" price of $25,000, receive all moneys which he had in the partnership business (the subject of the sale) in excess of the moneys in said business belonging to the purchasing partner. Stripped of confusing details, the case may, for illustration, be stated, in round figures, as follows: Freedman and Fineberg are equal

partners. Each has put into the business, say, $50,000 in cash, and the total assets thus amount to $100,000. Fineberg then draws out $25,000, reducing the assets to $75,000. They then agree to dissolve by Fineberg purchasing Freedman's interest at $25,000, plus such additional sum as represents the excess of Freedman's money in the business over Fineberg's. As I understand it, the majority opinion figures that this excess is only $12,500. I think it is $25,000.

.This would lead me to an affirmance of the conclusions of the learned vice-chancellor were it not for the fact that he included in the amount to be charged against Fineberg, as withdrawn by him, the amount of a $10,500 note originally given for part of the investment (which was lost) into a separate enterprise, the nature of which investment, whether it was by the firm or only by Fineberg, was the subject of dispute. The vice-chancellor found that this separate investment was not a firm matter, but purely Fineberg's, and with this I agree, and this would lead to an affirmance *in toto* were it not for the fact that at the time of the dissolution purchase, this note had been actually taken up by the firm with firm money and by clause 4 of the purchase agreement, as made reciprocal on this point by clause 5 thereof, it was expressly stipulated that the seller, Freedman, released the purchaser, Fineberg, from all liability of whatsoever description upon or by reason of this particular note in which firm assets were then invested and then belonging to the firm.

This view leads me to the result that Fineberg is not now chargeable with this note, and that the amount which he should pay Freedman, in addition to the $25,000 already paid, is $13,895.03, instead of the $24,390.03 decreed (with a slight arithmetical error of $5) by the court of chancery.

*For affirmance*—None.

*For reversal*—PARKER, WHITE—2.

*For modification*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, GARDNER—11.